## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO LUIS GAVILAN-CRUZ,** | : | **No. 3:24-CV-1945** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pedro Luis Gavilan-Cruz initiated the above-captioned *pro se* action pursuant to 42 U.S.C. § 1983,[1] alleging that Pennsylvania Department of Corrections officials and medical personnel at a state prison violated his constitutional rights. The court will dismiss Gavilan-Cruz's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b)(1) and grant him one final opportunity to amend.

## I.    BACKGROUND

During all times relevant, Gavilan-Cruz was confined at the State Correctional Institution, Mahanoy (SCI Mahanoy), located in Frackville, Pennsylvania. (Doc. 14 ¶ 2). He initially filed an abbreviated complaint seeking

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

a temporary restraining order or preliminary injunction. (Doc. 1). That complaint
was screened under 28 U.S.C. § 1915A(a) and dismissed without prejudice.
(See generally Docs. 12, 13).

Gavilan-Cruz then filed a lengthy amended complaint, which spans 46
pages and contains more than 364 paragraphs. (See generally Doc. 14). The
gravamen of his amended complaint is that he was experiencing urinary retention
issues and allegedly did not receive proper medical care from SCI Mahanoy
medical providers. He alleges that from August 2024 through November 2024,
he experienced problems emptying his bladder, including what he believes to be
"urethral collapse," but that he did not receive appropriate treatment and was not
afforded a consultation with an outside specialist. (See id. ¶¶ 32-90). His claims
sound predominantly in Eighth Amendment deliberate indifference to serious
medical needs, but he also alleges First Amendment retaliation and Fourteenth
Amendment equal protection claims. He additionally asserts multiple state-law
torts, including but not limited to battery, fraudulent misrepresentation, lack of
informed consent, negligence, medical malpractice, intentional infliction of
emotional distress, and negligent infliction of emotional distress.

Gavilan-Cruz sues the following defendants: the Pennsylvania Department
of Corrections (DOC), SCI Mahanoy, Wellpath LLC (Wellpath), the Bureau of
Health Care Services, Dorina Varner, Keri Moore, Superintendent B. Mason, J.

2

Mahallay, L. Banta, Christina Hauser, Rachael Mosells (incorrectly identified in the amended complaint as "Rachel Howells"), J. Eyer, Michele Donovan, E. Gower, Nicholle Boguslaw, Catherine Fisher, Lynda Hiltner, C. Toms, and three unidentified SCI Mahanoy medical providers (John Doe, Jane Doe #1, and Jane Doe #2, collectively "Doe Defendants").  (See id. ¶¶ 4-23).  He sues all Defendants in their individual and official capacities.  (Id. at p. 1).  He seeks retrospective declaratory relief, compensatory and punitive damages, and prospective injunctive relief in the form of better medical care.  (Id. at p. 45).

In November 2024, defendant Wellpath filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.  (See Doc. 10; Doc. 10-1).  This case was subsequently stayed pursuant to the automatic stay entered by the bankruptcy court.  (See Doc. 15).  Following the lifting of the automatic stay, the court reopened this case.  (See Doc. 18).

Wellpath then moved for dismissal of the claims against it, as those claims had been discharged in bankruptcy.  (See Doc. 20).  The court granted that motion, dismissing all claims against Wellpath.  (See Doc. 22).  The court additionally directed counsel for Wellpath to identify any named defendants who were current or former Wellpath employees, as claims against those employees may have been released as part of the Chapter 11 plan.  (See Doc. 23).  Counsel

3

for Wellpath identified Nicholle Boguslaw, Rachael Mosells, and Catherine Fisher as current or former Wellpath employees.  (See Doc. 24).

The court then ordered Gavilan-Cruz to show cause as to whether he had affirmatively opted out of the Third-Party Release contained in Wellpath's confirmed Chapter 11 plan so that he could pursue pre-petition claims against Boguslaw, Mosells, and Fisher.  (See Doc. 25).  Gavilan-Cruz did not offer any allegation or evidence that he had opted out of the Third-Party Release or sought any other relief in the Chapter 11 proceeding, and therefore all claims against Boguslaw, Mosells, and Fisher were dismissed without prejudice to Gavilan-Cruz's right to pursue relief in the bankruptcy court.  (See Doc. 27).

Presently before the court are the remaining claims in Gavilan-Cruz's amended complaint.  Upon screening as required by 28 U.S.C. § 1915A(a), he fails to state a claim under Section 1983.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees.  See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"  Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a

*pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d

5

Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)).  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.  Id. (quoting Iqbal, 556 U.S. at 679).  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."  Id. (quoting Iqbal, 556 U.S. at 679).  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 681.

Because Gavilan-Cruz proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Gavilan-Cruz, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Gavilan-Cruz asserts Section 1983 claims under the First, Eighth, and Fourteenth Amendments.  He additionally asserts a host of state-law tort claims.

6

The court will address, in turn, his multiple pleading deficiencies that require dismissal of his federal claims pursuant to 28 U.S.C. § 1915A(b)(1).

## A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. Id. (quoting Rode, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x

924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

First, any Section 1983 claims against defendants Varner, Moore, Mahallay, Gower, and Donovan must be dismissed for lack of personal involvement in the alleged constitutional misconduct. These Defendants' only involvement appears to be the handling of Gavilan-Cruz's grievances. (See Doc. 14 ¶¶ 71-76). Yet involvement in the post-incident grievance process does not plausibly allege personal involvement in a constitutional violation.

Second, Gavilan-Cruz attempts to assert supervisory liability claims against Varner, Moore, Mason, Mahallay, Eyer, Banta, Hauser, Toms, Gower, and Hiltner. (See id. ¶¶ 204-222). His allegations, however, fall woefully short of plausibly alleging personal involvement, as he lumps all Defendants together and does not assert what each particular Defendant did or did not do that would establish supervisory liability for a constitutional violation. As just one example, he alleges that these Defendants should be liable for Fourteenth Amendment equal protection violations because they "directly or indirectly acting under color of state law[] approved or ratified the unlawful . . . conduct of [d]efendants [Mosells], Fisher, Boguslaw, John Doe[], [and] Jane Does #1 and 2 as heretofore

described." (Id. ¶ 220). In no way does this sentence plausibly allege personal involvement for supervisory liability for a constitutional tort claim. Consequently, all Section 1983 claims must be dismissed against Varner, Moore, Mason, Mahallay, Eyer, Banta, Hauser, Toms, Gower, Donovan, and Hiltner pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.    "Person" for Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law." Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (emphasis supplied) (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)). Only "persons" are subject to suit under Section 1983; state agencies such as the DOC do not qualify. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983 purposes); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (noting that a state agency may not be sued under Section 1983 because it is not a "person"); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential) (dismissing Section 1983 claims against prison and Department of Corrections because they "are not persons subject to suit under" Section 1983).

Gavilan-Cruz cannot sue the DOC, SCI Mahanoy, or the Bureau of Health Care Services under Section 1983 because these state entities are not "persons" subject to Section 1983 liability.  See Fischer, 474 F.2d at 992; Foye, 675 F. App'x at 215.  Additionally, any claim against a state agency, entity, or department is akin to suing the state itself, and such claims are generally barred by Eleventh Amendment sovereign immunity.  See Harper v. Jeffries, 808 F.2d 281, 284 n.4 (3d Cir. 1986) (noting that any Section 1983 action by prisoner against Pennsylvania Parole Board is barred by Eleventh Amendment); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar [against civil rights suits in federal court targeting a state] extends to suits against departments or agencies of the state having no existence apart from the state."); Foye, 675 F. App'x at 215.  Accordingly, to the extent that any Section 1983 claim is asserted against the DOC, SCI Mahanoy, or the Bureau of Health Care Services, that claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.[2]

---

[2] Gavilan-Cruz asserts a Section 1983 claim against Wellpath pursuant to Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978), for an alleged unlawful policy. (See Doc. 14 ¶¶ 223-28).  This constitutional tort claim (along with any other claim against Wellpath) was dismissed in the court's September 25, 2025 order, as it was discharged in bankruptcy. (See Doc. 22).

### C.    Official Capacity Claims

Gavilan-Cruz sues all prison-official Defendants in their individual and official capacities.  However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.  U.S. CONST. amend. XI; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity because such lawsuits are essentially civil actions "against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.  See 42 PA. CONS. STAT. ANN. § 8521(b); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and

declaratory relief." Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa., 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, Ex parte Young, 209 U.S. 123 (1908)).

Gavilan-Cruz's official capacity claims, to the extent they seek monetary damages, are barred by Eleventh Amendment sovereign immunity.  And his request for declaratory relief is retrospective in nature, so it does not meet the exception to sovereign immunity noted above.  Insofar as he requests prospective injunctive relief (*i.e.*, being provided different or additional medical care), his official capacity claims potentially could move forward against appropriate SCI Mahanoy officials capable of granting relief.  However, as explained below, Gavilan-Cruz fails to plausibly allege an underlying Section 1983 violation, so there is no basis for prospective injunctive relief and any official capacity claim seeking such relief fails.

## D.    First Amendment Retaliation

Gavilan-Cruz alleges that Mosells, Fisher, Boguslaw, John Doe, Jane Doe #1, and Jane Doe #2 retaliated against him for filing grievances by providing deficient medical care.  (Doc. 14 ¶¶ 80, 137-43).  First, Mosells, Fisher, and Boguslaw have been dismissed from this action and require no further discussion.  Second, Gavilan-Cruz's retaliation claim against the unidentified Doe Defendants fails because he has not plausibly alleged causation.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)). To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months. See Conard v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018).

However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant." Id. Another approach is to demonstrate "a pattern of antagonism coupled with timing." DeFlaminis, 480 F.3d at 267. Finally, causation can be inferred "from the evidence gleaned from the record as a whole." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]" Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

Gavilan-Cruz's allegation that he filed grievances is sufficient to plead protected First Amendment conduct. And at screening, the court assumes—without deciding—that intentionally providing deficient medical care could rise to the level of an adverse action. However, Gavilan-Cruz has not plausibly alleged the third retaliation element: that the Doe Defendants were substantially motivated by his protected conduct to take an adverse action against him.

First, he does not allege that he named any of the Doe Defendants in his grievances. Instead, he asserts that he "personally included defendants Mason, Eyer, Banta, and Hauser." (Doc. 14 ¶ 71). Second, he does not plausibly plead facts demonstrating how the Doe Defendants would even have knowledge of the

grievances, as they were not identified in the grievances and it does not appear that they took part in any investigation or response thereto.  (See id. ¶¶ 71-76).

It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.  See, e.g., Nunez v. Wetzel, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); Kendrick v. Hann, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); Murray v. Smithbower, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); Horan v. Collins, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); Victor v. Lawler, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); Evans v. Rozum, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); Royster v. Beard, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), aff'd 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis). Such general allegations fail to establish or even infer knowledge of the protected

conduct, and they likewise fail to show why a defendant would take the alleged adverse action.

Gavilan-Cruz's First Amendment claims against the Doe Defendants fail because he has not plausibly alleged causation. Dismissal of these First Amendment claims is thus required for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### E.   Fourteenth Amendment Equal Protection Claims

Gavilan-Cruz asserts his equal protection claims against the same Defendants: Mosells, Fisher, Boguslaw, John Doe, Jane Doe #1, and Jane Doe #2. (See Doc. 14 ¶¶ 144-50). As noted, Mosells, Fisher, and Boguslaw have been dismissed from this action and require no further discussion. As to Gavilan-Cruz's equal protection claims against the Doe Defendants, those claims fall short as well.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016). An

equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment." Phillips, 515 F.3d at 243 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Gavilan-Cruz's amended complaint fails to plausibly plead an equal protection violation. He does not allege membership in a protected class and thus appears to be attempting to raise a "class of one" claim. Yet he has failed to identify others who are similarly situated to him and who received intentionally different treatment by a Doe Defendant, and thus he has failed to plausibly plead a class-of-one equal protection claim against any Defendant. Although he states in conclusory fashion that Defendants "treat[ed] him different [sic] than the many John Does similarly situated prisoners [sic] who suffer urinary issues, urinary retention, and catheters with leg bags," this allegation is a mere conclusion of law and does not contain any specific facts. Thus, it is not entitled to the assumption of truth and can be disregarded. See Connelly, 809 F.3d at 787.[3]

---

[3] To the extent that Gavilan-Cruz's amended complaint can be construed as attempting to assert a Fourteenth Amendment procedural due process claim, that claim fails as well. Gavilan-Cruz has not identified an interest protected by the Due Process Clause of which he was deprived. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (requiring plaintiff to establish "life, liberty, or property" interest that is "at stake" to pursue a due process claim). His threadbare assertion that he has "a liberty interest in his body to not be mistreated without notice, hearing, and due process of law where [he] had no other alternative for care," (see Doc. 14 ¶ 145), attempts to shoehorn an Eighth Amendment medical indifference claim into a procedural due process cause of action.

### F.    Eighth Amendment Medical Indifference

The true essence of Gavilan-Cruz's lawsuit is his claim of deliberate indifference to serious medical needs.  Although he attempts to assert five different types of medical indifference claims, (see Doc. 14 ¶¶ 102-36), they are—in actuality—one claim: that his medical treatment at SCI Mahanoy fell below the constitutional minimum.

Once again, Gavilan-Cruz's Eighth Amendment claims target Mosells, Fisher, Boguslaw, John Doe, Jane Doe #1, and Jane Doe #2.  But because Mosells, Fisher, and Boguslaw are no longer part of this lawsuit, the court will assess the sufficiency of his medical indifference claims against the remaining Doe Defendants.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."  Durham v. Kelley, 82 F.4th 217, 229

---

As such, any procedural due process claim that Gavilan-Cruz attempts to assert requires dismissal under Section 1915A(b)(1).

(3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. Rouse, 182 F.3d at 197.

Gavilan-Cruz has plainly identified a serious medical need. He plausibly alleges urinary retention, catheterization, potential urethral "collapse," and severe pain.

His medical indifference claims, however, fail at the second element. That is, he has not plausibly alleged that a Defendant (or Defendants) exhibited deliberate indifference to his serious medical needs. This failure is primarily a result of Gavilan-Cruz's cryptic pleading. During the main section of his complaint where he sets forth the facts related to his medical conditions and treatment, he repeatedly alleges that "Jane Doe #1 or 2 or John Doe [] or [Mosells] or Fisher or Boguslaw" took some action or failed to take some action with respect to his medical care. (See, e.g., Doc. 14 ¶¶ 52, 56-60, 63, 65-67, 79, 80, 87). From this vague and imprecise style of pleading, it is simply impossible to determine whether Gavilan-Cruz has plausibly alleged that *any* Defendant knew of his serious medical needs and acted with deliberate indifference toward them.

Moreover, for the few paragraphs of his amended complaint where he provides more precise allegations about a specific Defendant, those allegations do not rise to the level of constitutional misconduct. For example, he alleges that on the first day of his symptoms, "Jane Does #1 and 2 and defendant [Mosells]" negligently installed a catheter and prescribed Flomax to treat his urinary retention symptoms. (See id. ¶¶ 37-39). In paragraph 42, he alleges that Jane Doe #1 negligently inserted a Foley catheter to treat his urinary retention symptoms several days later. (Id. ¶¶ 41-42). In paragraph 45, he asserts that

Jane Doe #1 negligently installed another catheter to treat his urinary retention, which catheter later failed. (Id. ¶ 45). In paragraph 49, he alleges that his catheter broke and he saw Jane Doe #1, who informed him that "it needed a tube" and then told him to "learn how to use it" properly, which remark Gavilan-Cruz alleges was offered in a "rude manner." (Id. ¶ 49). These allegations of treatment provided by Defendants in response to Gavilan-Cruz's repeated requests for medical care in no way satisfy the high bar of deliberate indifference. At most, they sound in medical negligence (a term which Gavilan-Cruz frequently employs), which does not implicate a constitutional violation.

### G. Supervisory Liability

As noted above, Gavilan-Cruz attempts to assert supervisory liability claims against numerous Defendants. He has not done so.

"[A] supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Allegations of direction or of actual knowledge and acquiescence, however, must be made with particularity. See Dooley, 957 F.3d at 374.

Gavilan-Cruz alleges, in conclusory fashion, that Defendants "directly or indirectly[] approved or ratified the unlawful . . . conduct of" the Doe Defendants and Mosells, Fisher, and Boguslaw. (Doc. 14 ¶ 213). He also states that they "allowed an environment to develop in which there [was] an unreasonable risk that a constitutional injury [would] occur and such injury did occur[.]" (Id. ¶ 214). In a later paragraph, he broadly alleges that Defendants had the authority "to implement more effective policies or practices" but failed to do so. (Id. ¶ 216). Yet he does not explain what policies were ineffective, much less what policies or practices Defendants should have implemented. Gavilan-Cruz also cursorily asserts that Defendants "failed to instruct, supervise, control and discipline" their employees, (id. ¶ 205), and failed to "properly train and manage" them, (id. ¶ 207). The foregoing vague and conclusory allegations are a far cry from pleading with particularity. The allegations are, in actuality, mere legal conclusions that are bereft of facts, which simply restate different types of supervisory liability. Therefore, they do not plausibly state a supervisory liability claim against any Defendant.

Gavilan-Cruz's pleading problems are multiplied by the fact that, as noted above, he does not plead specific, individualized action in the alleged supervisory violations. Rather, he lumps all Defendants together and claims that they committed some vague, collective action (or inaction) to violate his rights. Such

pleading does not meet Section 1983's requirement for personal involvement. For both reasons, Gavilan-Cruz's supervisory liability claims must be dismissed under Section 1915A(b)(1).

### H.    State-Law Claims

Gavilan-Cruz asserts numerous state-law claims, including battery, fraudulent misrepresentation, negligence, medical malpractice, lack of informed consent, intentional infliction of emotional distress, and negligent infliction of emotional distress.  However, because all federal Section 1983 claims must be dismissed, the court declines to exercise supplemental jurisdiction over Gavilan-Cruz's numerous state-law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

### I.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless

amendment would be inequitable or futile." <u>Grayson</u>, 293 F.3d at 114.  The court

will grant Gavilan-Cruz one final opportunity to amend.

When reviewing Gavilan-Cruz's amended complaint, the court finds that it

is unnecessarily complicated, long-winded, and lacking in substance.  The

essence of the federal portion of his lawsuit is Eighth Amendment deliberate

indifference to serious medical needs.  More specifically, Gavilan-Cruz appears

to assert an adequacy-of-care claim against a handful of defendants.  He

maintains that although he received substantial treatment by SCI Mahanoy

medical staff in the second half of 2024, that treatment was inadequate and

ineffective to address his urinary issues and thus fell below the constitutional

minimum.  Instead of focusing on this adequacy-of-care claim against the

medical personnel who actually treated him, Gavilan-Cruz attempts to sue nearly

two dozen defendants and to assert numerous (often frivolous) causes of action.

Nevertheless, based on the facts alleged in the body of his amended

complaint, (Doc. 14 ¶¶ 32-90), it is possible that he could plausibly allege an

adequacy-of-care claim if he corrects the material pleading errors identified in

this Memorandum.  The court will give him one final pleading opportunity to

attempt to do so.

If Gavilan-Cruz chooses to file a second amended complaint, it should be a

stand-alone document, complete in itself and without reference to any previous

pleadings. The second amended complaint should set forth his claims in *short, concise, and plain statements*, and in sequentially numbered paragraphs. Gavilan-Cruz is admonished that he *may not* submit an overly lengthy, prolix pleading similar to his amended complaint. See Glover v. F.D.I.C., 698 F.3d 139, 147 (3d Cir. 2012) ("Rule 8(a) requires that a complaint be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim."); Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (explaining that "a district court acts within its discretion when it dismisses an excessively prolix and overlong complaint," especially after the litigant has been given an opportunity "to better tailor [his] pleading").

Gavilan-Cruz must address the numerous pleading deficiencies identified in this Memorandum. He may not include claims against Defendants who have been dismissed from this action. He must specify the offending actions taken by a particular defendant, sign the second amended complaint, and indicate the nature of the relief sought.

If Gavilan-Cruz does not timely file a second amended complaint, dismissal without prejudice of his Section 1983 claims will automatically convert to dismissal with prejudice and the court will close this case. If a second amended

pleading is filed that violates the foregoing express directions, that document will be summarily stricken from the record.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss Gavilan-Cruz's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b), as more fully set forth herein.  The court declines to exercise supplemental jurisdiction over his state-law tort claims. Limited leave to amend will be granted.  An appropriate Order follows.

Date: 2/6/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court