IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PEDRO LUIS GAVILAN-CRUZ,  :  No. 3:24-CV-1945
           Plaintiff  :

                :  (Judge Munley)

    v.  :

                :

PENNSYLVANIA DEPARTMENT OF  :
CORRECTIONS, *et al.*,  :
           Defendants  :

**MEMORANDUM**

Pedro Luis Gavilan-Cruz initiated the above-captioned *pro se* action

pursuant to 42 U.S.C. § 1983,[1] alleging that Pennsylvania Department of

Corrections officials and medical personnel at a state prison violated his

constitutional rights.  Gavilan-Cruz has been given multiple opportunities to

amend but has repeatedly failed to state a claim upon which relief may be

granted.  His second amended complaint likewise fails to plausibly allege a

constitutional violation, so the court will dismiss with prejudice his Section 1983

claims pursuant to 28 U.S.C. § 1915A(b)(1) and will decline to exercise

supplemental jurisdiction over any remaining state-law claims.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

## I.    BACKGROUND

During all times relevant, Gavilan-Cruz was confined at the State Correctional Institution, Mahanoy (SCI Mahanoy), located in Frackville, Pennsylvania. (See Doc. 14 ¶ 2). He initially filed an abbreviated complaint seeking a temporary restraining order or preliminary injunction. (Doc. 1). That complaint was screened under 28 U.S.C. § 1915A(a) and dismissed without prejudice. (See generally Docs. 12, 13).

Gavilan-Cruz then filed a lengthy amended complaint, which spanned 46 pages and contained more than 364 paragraphs. (See generally Doc. 14). The gravamen of his amended complaint was that he was experiencing urinary retention issues and allegedly did not receive proper medical care from SCI Mahanoy medical providers. He alleged that from August 2024 through November 2024, he experienced problems emptying his bladder, including what he believes to be "urethral collapse," but that he did not receive appropriate treatment and was not afforded a consultation with an outside specialist. (See id. ¶¶ 32-90). His claims sounded predominantly in Eighth Amendment deliberate indifference to serious medical needs, but he also alleged First Amendment retaliation and Fourteenth Amendment equal protection claims. He additionally asserted numerous state-law torts, including but not limited to battery, fraudulent misrepresentation, lack of informed consent, negligence, medical malpractice,

intentional infliction of emotional distress, and negligent infliction of emotional distress.

Gavilan-Cruz sued the following defendants in his amended complaint: the Pennsylvania Department of Corrections (DOC), SCI Mahanoy, Wellpath LLC (Wellpath), the Bureau of Health Care Services, Dorina Varner, Keri Moore, Superintendent B. Mason, J. Mahallay, L. Banta, Christina Hauser, Rachael Mosells (incorrectly identified in the amended complaint as "Rachel Howells"), J. Eyer, Michele Donovan, E. Gower, Nicholle Boguslaw, Catherine Fisher, Lynda Hiltner, C. Toms, and three unidentified SCI Mahanoy medical providers (John Doe, Jane Doe #1, and Jane Doe #2, collectively "Doe Defendants").  (See id. ¶¶ 4-23).  He sued all Defendants in their individual and official capacities.  (Id. at p. 1).  He sought retrospective declaratory relief, compensatory and punitive damages, and prospective injunctive relief in the form of better medical care.  (Id. at p. 45).

In November 2024, defendant Wellpath filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.  (See Doc. 10; Doc. 10-1).  This case was subsequently stayed pursuant to the automatic stay entered by the bankruptcy court.  (See Doc. 15).  Following the lifting of the automatic stay, the court reopened this case.  (See Doc. 18).

Wellpath then moved for dismissal of the claims against it, as those claims had been discharged in bankruptcy. (See Doc. 20). The court granted that motion, dismissing all claims against Wellpath. (See Doc. 22). The court additionally directed counsel for Wellpath to identify any named defendants who were current or former Wellpath employees, as claims against those employees may have been released as part of the Chapter 11 plan. (See Doc. 23). Counsel for Wellpath identified Nicholle Boguslaw, Rachael Mosells, and Catherine Fisher as current or former Wellpath employees. (See Doc. 24).

The court then ordered Gavilan-Cruz to show cause as to whether he had affirmatively opted out of the Third-Party Release contained in Wellpath's confirmed Chapter 11 plan so that he could pursue pre-petition claims against Boguslaw, Mosells, and Fisher. (See Doc. 25). Gavilan-Cruz did not offer any allegation or evidence that he had opted out of the Third-Party Release or sought any other relief in the Chapter 11 proceeding, and therefore all claims against Boguslaw, Mosells, and Fisher were dismissed without prejudice to Gavilan-Cruz's right to pursue relief in the bankruptcy court. (See Doc. 27).

The court then screened the remaining claims in Gavilan-Cruz's amended complaint. First, the court observed that Gavilan-Cruz had failed to allege personal involvement for numerous Defendants. (See Doc. 28 at 7-9). Next, the court dismissed the claims against the DOC, SCI Mahanoy, and the Bureau of

4

Health Care Services because those entities are not "persons" subject to Section 1983 liability.  (See id. at 9-10).  The court then dismissed Gavilan-Cruz's official capacity claims, noting that any official capacity claims for money damages are barred by Eleventh Amendment sovereign immunity, the declaratory relief sought was retrospective in nature, and any proper official capacity claim for prospective injunctive relief failed because there was no underlying constitutional violation alleged.  (See id. at 11-12).

The court then turned to the Section 1983 claims themselves.  The court found that Gavilan-Cruz had not plausibly alleged a First Amendment retaliation claim because he had failed to plead causation for any Defendant.  (See id. at 12-16).  Gavilan-Cruz's Fourteenth Amendment equal protection claim fell short because he did not allege facts demonstrating that others who were similarly situated to him received intentionally different treatment by any Defendant.  (See id. at 16-17).  His Eighth Amendment claims of deliberate indifference to serious medical needs failed because he did not plausibly allege that any Defendant exhibited deliberate indifference toward his medical needs.  (See id. at 18-21).  At most, some of his allegations sounded in medical negligence.  (See id. at 20-21).  Finally, Gavilan-Cruz's supervisory liability claims failed because his allegations were "mere legal conclusions" that were "bereft of facts" and simply restated "different types of supervisory liability."  (Id. at 21-22).  Those claims

likewise failed because they did not specify personal involvement by any supervisor Defendant. (See id. at 22-23).

After declining to exercise supplemental jurisdiction over any remaining state-law claims, (see id. at 23), the court gave Gavilan-Cruz specific directions for amendment. Among other things, the court explained to Gavilan-Cruz that any amended pleading must be a "stand-alone document" that is complete in itself and does not reference previous pleadings, should utilize short and plain statements in paragraph form, should not be overly lengthy or wordy, must address the numerous pleading deficiencies identified by the court, and should properly focus on his claims of deficient medical care rather than raising other frivolous Section 1983 claims. (See id. at 24-25).

After requesting and receiving an extension of time, (see Docs. 31, 32), Gavilan-Cruz eventually filed a second amended complaint, (see generally Doc. 33). That complaint does not cure the material pleading deficiencies previously identified by the court, so it will be dismissed as well.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be

granted[.]" Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Gavilan-Cruz proceeds *pro se*, his pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Gavilan-Cruz, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Gavilan-Cruz asserts Section 1983 claims under the Eighth and Fourteenth Amendments.  He additionally mentions several state-law tort claims, although these claims are largely undeveloped.  The court will once again address, in turn, the multiple pleading deficiencies that require dismissal of Gavilan-Cruz's federal claims pursuant to 28 U.S.C. § 1915A(b)(1).

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context).  Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity.  Id. (quoting Rode, 845 F.2d at 1207).  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.  See id. (affirming dismissal of claims against prison

9

officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Gavilan-Cruz's second amended complaint does not name the defendants he is suing. Upon careful inspection, he also does not identify any particular Defendant in the body of the amended pleading, raising immediate red flags regarding personal involvement. Gavilan-Cruz was explicitly admonished that he must "plausibly plead facts that demonstrate the defendant's 'personal involvement in the alleged misconduct,'" (Doc. 28 at 7 (quoting Dooley, 957 F.3d at 374)), and "specify the offending actions taken by a particular defendant," (id. at 25). Yet nowhere in his second amended complaint does he allege what any specific Defendant did or did not do to violate his constitutional rights. Rather, he appears to lump all "prison officials" together and claim that they took collective, unconstitutional actions. Thus, Gavilan-Cruz's Section 1983 claims in his second

amended complaint must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.    Fourteenth Amendment Equal Protection Claim

Gavilan-Cruz reasserts his equal protection claim, although he does not allege who unlawfully discriminated against him.  (See Doc. 33 ¶¶ 3, 6, 9).  His undeveloped equal protection allegations once again fail to state a claim for relief.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]"  Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016).  An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment."  Phillips, 515 F.3d at 243 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

11

Gavilan-Cruz's second amended complaint fails to plausibly plead an equal protection violation. He asserts that he is "Cuban American," (Doc. 33 ¶ 3), and that his allegedly deficient medical treatment "made him feel as if he was lesser of a human being," (id. ¶ 9). However, he does not plausibly allege how he was treated differently based on his national origin, nor who discriminated against him based on this protected trait.

Additionally, he has once again failed to identify others who are similarly situated to him and who received intentionally different treatment from any Defendant. His allegations are entirely conclusory, stating that unspecified state actors "intentionally treated him differently than others who are similarly situated, and there is no rational basis for the difference in treatment." (Id.) This allegation is a conclusion of law and does not contain any specific facts. Thus, it is not entitled to the assumption of truth and can be disregarded. See Connelly, 809 F.3d at 787. Without plausibly alleging facts that would implicate the elements of an equal protection violation, the court must dismiss Gavilan-Cruz's equal protection claim under Section 1915A(b)(1).

### C.    Eighth Amendment Medical Indifference Claim

Once again, the essence of Gavilan-Cruz's lawsuit is his claim of deliberate indifference to serious medical needs. He directly states as much. (See Doc. 33 ¶ 9 ("The realization is now clear that plaintiff only has 'ONE' actual claim and

12

that is the medical treatment at SCI-Mahanoy fell well below the 'CONSTITUTIONAL MINIMUM.'"); see also id. ¶ 2 ("The gravamen of this [second] amended complaint is that plaintiff was experiencing 'urinary retention' issues and did not receive proper[,] adequate medical care and treatment from medical staff at SCI-Mahanoy from August 2024 through November 2024.")).

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of

medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. Rouse, 182 F.3d at 197.

As in his first amended complaint, Gavilan-Cruz has identified a serious medical need. He alleges urinary retention, catheterization, potential urethral "collapse," and severe pain. (See Doc. 33 ¶¶ 3, 6, 7, 10).

His medical indifference claims once again fail at the second element. That is, he has not plausibly alleged that a Defendant (or Defendants) exhibited deliberate indifference to his serious medical needs. This deficiency is primarily a result of Gavilan-Cruz's failure to allege personal involvement by any Defendant. Without alleging personal involvement, it follows that Gavilan-Cruz has not plausibly alleged that any Defendant knew of his serious medical needs and acted with deliberate indifference toward them.

Additionally, Gavilan-Cruz's second amended complaint consists mainly of conclusory allegations. For example, he asserts that he has been "deprived of

14

adequate medical and proper treatment," that unidentified "state officials . . . provided inadequate medical care and treatment," and that his "serious medical need . . . was ignored." (Id. ¶¶ 7, 10).  None of these broad allegations includes plausible facts showing that a Defendant was aware of Gavilan-Cruz's specific medical needs and acted with deliberate indifference toward them.

Deliberate indifference is a stringent standard, and Gavilan-Cruz's second amended complaint does not plausibly allege any such conduct by a Defendant or Defendants.  While he includes several more precise allegations that his sick-call slips were ignored, (id. ¶ 8), that he was denied a consultation with an outside specialist, (id. ¶ 3), and that he was refused additional follow-up treatment for his urinary issues, (id. ¶ 6), he does not allege *who* took these purportedly unlawful actions.  Thus, he has not alleged that any Defendant had knowledge of his serious medical needs and acted with deliberate indifference toward them.

Finally, Gavilan-Cruz has not plausibly alleged the third element of a medical indifference claim; *i.e.*, he has not alleged that any Defendant's deliberate indifference caused his harm.  Without plausibly pleading the second and third elements of an Eighth Amendment medical indifference claim, those claims must also be dismissed for failure to state a claim pursuant to Section 1915A(b)(1).

### D.    State-Law Claims

Gavilan-Cruz appears to assert state-law tort claims of medical negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (See Doc. 33 ¶ 3).  However, because all federal Section 1983 claims must be dismissed, the court declines to exercise supplemental jurisdiction over Gavilan-Cruz's state-law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

### E.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  Grayson, 293 F.3d at 114.  Further leave to amend will be denied, as Gavilan-Cruz has failed to plausibly plead a federal claim even after "amendments previously allowed."  See Foman v. Davis, 371 U.S. 178, 182 (1962); Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has

16

already had two chances to tell his story," providing "further leave to amend would be futile").

This court has provided Gavilan-Cruz with multiple opportunities to amend and specific directions for how to cure his pleading deficiencies. He has failed to adhere to those directions and consequently has not plausibly stated a Section 1983 claim. Because Gavilan-Cruz has had three opportunities to "tell his story," providing further leave to amend would be futile. Jones, 944 F.3d at 483.

## IV.   CONCLUSION

Based on the foregoing, the court will dismiss with prejudice Gavilan-Cruz's Section 1983 claims in his second amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The court declines to exercise supplemental jurisdiction over his state-law tort claims. An appropriate Order follows.

Date: 5/14/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

17